UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-464-JBC

ADVANCMED, LLC,                                                                                    PLAINTIFF,

V.                    **MEMORANDUM OPINION AND ORDER**

PITNEY BOWES, INC.,                                                                              DEFENDANT,

PITNEY BOWES CREDIT
CORPORATION,                                                                           COUNTER-CLAIMANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the summary judgment motions of defendant Pitney Bowes, Inc. (DE 34) and counter-claimant Pitney Bowes Credit Corporation (DE 35). The court, having reviewed the record and being sufficiently advised, will grant both motions.

**I. Factual Background**

The plaintiff, AdvancMed, LLC ("AdvancMed"), is a medical education company that creates and staffs medical education programs for physicians and medical providers. It sends "detailed, glossy, tri-fold invitations to its potential clients." DE 37, at 2. AdvancMed entered into a leasing agreement with Pitney Bowes, Inc. ("PBI") and Pitney Bowes Credit Corporation ("PBCC") to lease a printing system and faxing software so that it would no longer need to outsource the printing and mailing of the invitations. The lease agreement, executed on May 30, 2003, leased equipment to AdvancMed, including a printing system, a tabber,

and faxing software. Under the lease agreement, PBCC leased the equipment to AdvancMed pursuant to a finance lease agreement, and PBI supplied the equipment.

AdvancMed experienced problems with the leased equipment and software the first time it used them. The printing system did not work properly; specifically, the ink would smear so that the printed addresses and bar codes were not accepted by the postal service, the machine jammed on a routine basis, and the tabber would mis-align within a few pieces. PBI attempted to repair the printing system, and held meetings with AdvancMed to try and resolve the problems, but was unable to get the equipment working properly. The faxing software did not fax as many documents as AdvancMed expected or wanted. PBI attempted to resolve this issue, but was unable to increase the speed to a level that AdvancMed found satisfactory. According to PBI, the speed was limited by the technology used by the fax recipients. Even though the equipment was delivered and installed at AdvancMed in August 2003, the first time AdvancMed actually used the equipment was in January 2004. The problems with the equipment and software were experienced and identified by AdvancMed during their initial use in January 2004.

AdvancMed filed a complaint against PBI and PBCC in October 2005 in the Fayette Circuit Court, which was removed to this court in November 2005. AdvancMed's complaint asserted multiple causes of action against PBI and PBCC, including: (1) breach of contract; (2) breach of express warranty; (3) breach of

2

implied warranty; and (4) breach of the implied duty of good faith and fair dealing. In January 2006 this court dismissed all of AdvancMed's claims against PBCC, and in April 2006 dismissed all but two of the claims against PBI. *See* DE 8, 9. AdvancMed's remaining claims against PBI include claims for breach of contract and breach of the implied duty of good faith and fair dealing. PBI now moves for summary judgment on both claims. PBCC filed a counter-claim against AdvancMed on February 21, 2007, and now seeks summary judgment on its claim for remedies based on AdvancMed's alleged default on its contractual obligations under the lease agreement.

**II.  Standard of Review**

Summary judgment is appropriate only when there are no genuine issues of material fact in dispute and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56 (e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III. Legal Analysis**

    **A. PBI's Motion for Summary Judgment**

PBI argues that it is entitled to summary judgment on AdvancMed's remaining claim for breach of contract, as there are no material facts in dispute and the evidence fails to prove any breach. Without the breach-of-contract claim, the claim for breach of implied duty of good faith and fair dealing cannot be applied and thus PBI argues that this claim should also be dismissed.

As this court has previously found, the lease agreement between AdvancMed, PBCC, and PBI is a finance lease governed by Article 2A of the Uniform Commercial Code. The portion of the lease agreement that specifically applies to PBI is the "Equipment and Software Warranty and Maintenance and Service Agreement" which constitutes the supply contract through which PBI provided the equipment and software to AdvancMed. There are two provisions of the supply contract that are at issue in this matter. The first provision binds PBI to provide equipment and software "free from defect in material, workmanship or programming for 90 days following delivery." Lease Agreement, p. 5, ¶ 2, attached as exhibit A to DE 34 (hereinafter "Lease Agreement"). This provision was the only warranty that could be breached by PBI according to the following language in the supply contract:

> **THIS IS THE ONLY WARRANTY APPLICABLE TO THE LEASE, THE EQUIPMENT, PROM'S AND SOFTWARE, AND IS EXPRESSLY IN LIEU**

> **OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY. REPAIR OR REPLACEMENT OF THE EQUIPMENT BY PITNEY BOWES IS YOUR SOLE REMEDY FOR BREACH OF WARRANTY. NO RESPONSIBILITY IS ASSUMED BY PITNEY BOWES FOR ANY DAMAGES INCURRED BY REASON OF THE FAILURE OF THE EQUIPMENT, PROM'S OR SOFTWARE TO OPERATE AS INTENDED, INCLUDING INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.**

*Id.* The plaintiff is also alleging that PBI breached the following agreement to provide maintenance and repair services: "If you requested on page one that Equipment Maintenance be included in your Total Quarterly Payment, Pitney Bowes agrees to provide you, at no additional cost, with maintenance and emergency repair services on the Equipment, as required due to normal wear and tear." *Id.* ¶ 3.

AdvancMed argues that these two provisions should be read together to create a duty to provide equipment free from defect when delivered and to repair it if necessary so that it functions properly. They contend that the equipment did not work properly at the time it was first used. The printing system had various problems, including the ink smearing, the machine jamming, and the tabber not aligning properly. The faxing software also did not function according to expectations.

PBI contends that the plaintiff has not alleged the equipment was defective in materials, workmanship, or programming, and additionally argues that the warranty related only to defects found within the 90 days after delivery.

AdvancMed has not produced evidence relating to specific defects in the equipment or software other than to allege that it did not perform properly. It contends that the warranty provided that the equipment would be free from defect at the time it was delivered and that it was not free from defect because it did not function properly. The plaintiff fails to allege what the defects with the equipment were, but instead describes the resulting problems. No evidence is presented that the equipment or software was specifically defective in materials, workmanship, or programming. *See March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001) ("When a motion for summary judgment is made and supported by competent admissible evidence, the nonmovant may not rest on his pleadings, but must come forward with affidavits or other admissible evidence setting forth 'specific facts showing there is a genuine issue for trial.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986))).

Additionally, the warranty is limited by its provision that the equipment will be free from defects for 90 days. The equipment was delivered in August 2003 and was not used until January 2004, so even if there was evidence of specific defects the warranty expired prior to AdvancMed's discovery of such defects. There are no material facts in dispute regarding whether the equipment or software was defective within the 90 days following delivery. Thus, AdvancMed cannot demonstrate a breach of contract by PBI based on the warranty provision in the supply contract.

PBI also argues that the clause requiring it to provide maintenance and repair services includes language limiting such services to problems "due to normal wear and tear." *Id.* ¶3. The term "wear and tear" commonly means "that ordinary and natural deterioration or abrasion which an object experiences by its expected contacts between its component parts and outside objects during the period of its natural life expectancy." *Cyclops Corp. v. Home Ins. Co.*, 352 F. Supp. 931, 936 (W.D. Pa. 1973). AdvancMed has not presented evidence that the problems with the equipment or software were due to wear and tear, but to the contrary states that the problems existed when the equipment and software were first used. The plaintiff does summarily state that the problems were "due to wear and tear," but does not present any evidence of this other than its conclusory statement. It alleges that the printing system operated properly prior to its installation and so any subsequent problems must be due to wear and tear. Such a general statement does not raise a genuine dispute on this issue. The plaintiff clearly states that the problems existed from the time of the equipment's first use at AdvancMed. Since PBI's obligation under the clause requiring maintenance and repair involved only problems due to wear and tear, and the plaintiff has failed to present evidence of any such wear and tear, there are no material facts in dispute regarding any breach of the maintenance provision.

PBI is entitled to summary judgment on the claim for breach of contract because the plaintiff has failed to raise any genuine issues as to the material facts

of this case. As AdvancMed has not raised a genuine issue as to whether PBI breached any portion of the contract, there is no underlying contractual provision to which the breach of the duty of good faith and fair dealing claim may be applied, and PBI is entitled to summary judgment on that claim as well.

### B.  PBCC's Motion for Summary Judgment on its Counter-claim

PBCC argues that it is entitled to summary judgment on its counter-claim because AdvancMed has defaulted on its contractual obligation to make payments under the lease agreement. The lease agreement includes terms regarding the required payments by AdvancMed as well as what constitutes a default under the agreement. AdvancMed agreed to "pay each and every Total Quarterly Payment for the entire Initial Lease Term . . . ." Lease Agreement, p. 2, ¶ 2. The lease additionally bound AdvancMed to the payments with the following language:

> **THIS LEASE CANNOT BE CANCELLED OR TERMINATED FOR ANY REASON.  ALL TOTAL QUARTERLY PAYMENTS AND OTHER PAYMENTS UNDER THIS LEASE ARE UNCONDITIONAL AND ABSOLUTE AND YOU SHALL PAY THEM FOR THE ENTIRE LEASE TERM REGARDLESS OF WHETHER THE EQUIPMENT IS DAMAGED, DESTROYED, DEFECTIVE, UNUSABLE OR BECOMES OBSOLETE, AND REGARDLESS OF ANY DISPUTE WITH, OR CLAIMS AGAINST, PBCC, VENDOR OR ANY OTHER PARTY.  YOUR PAYMENT AND PERFORMANCE OBLIGATIONS UNDER THIS LEASE ARE NOT SUBJECT TO DEFENSE, SETOFF, COUNTERCLAIM, ABATEMENT OR REDUCTION FOR ANY REASON (COLLECTIVELY "DEFENSES").**

*Id.* This type of clause, that requires unconditional payment by the lessee, is authorized by Article 2 of the Uniform Commercial Code, has been adopted in Kentucky, and has been enforced by the courts. *See* U.C.C. § 2A-407; Ky. Rev.

Stat. Ann. § 355.2A-407; *Leasetec Corp. v. Orient Systems, Inc.*, 85 F. Supp. 2d 1310, 1316 & n.2 (S.D. Fla. 1999) (citing cases).

AdvancMed's failure to make payments to PBCC as required by the lease agreement constitutes a default of the agreement.  *See* Lease Agreement, p. 3, ¶ 13.  Article 2 provides default rights and remedies among the parties to a finance lease, but also provides that "the lease agreement may include rights and remedies for default in addition to or in substitution for those provided in this Article . . . ."  U.C.C. § 2A-503(1); Ky. Rev. Stat. Ann. § 355.2A-503(1).  The lease agreement between AdvancMed and PBCC provides that upon AdvancMed's default, PBCC may "accelerate and require immediate payment, as liquidated damages, of all Total Quarterly Payments . . . ."  Lease Agreement, p. 3, ¶ 14.  It also states that upon default AdvancMed will be liable for PBCC's costs, including reasonable attorneys' fees, incurred in enforcing its rights against AdvancMed.  These additional remedies listed in the lease agreement are valid and binding on the parties.  *See U.S. Achievement Acad., LLC v. Pitney Bowes, Inc.*, 458 F. Supp. 2d 389, 407 (E.D. Ky. 2006).

The plaintiff argues that it should not be obligated to pay for equipment which did not operate properly, specifically because the defendant acknowledges that there were problems with the equipment.  This argument is directly refuted by the language of the agreement which requires that payments must be made "regardless of whether the equipment is damaged, destroyed, defective, unusable

9

or becomes obsolete . . . ." Lease Agreement, p. 2, ¶ 2.  According to the terms of the agreement, PBCC was not responsible in any way for the quality of the equipment, as it was only the finance lessor and not the supplier of the equipment. AdvancMed also contends that PBCC waived its ability to enforce the unconditional payments clause when AdvancMed received a letter suspending one of the payments due under the agreement.  The letter stated that "Pitney Bowes will suspend AdvancMed's January 2005 quarterly payment"; however, it then stated that "AdvancMed should continue to make quarterly payments after that date." Letter, attached as exhibit to DE 37.  The letter did not waive any future payments, as it specifically provided that the payments should resume after the suspended payment.

The Lease Agreement requires AdvancMed to make 57 monthly payments to PBCC totaling $100,206.00.  AdvancMed has not made a payment to PBCC since August 2006 and still owes PBCC $33,552.87.  *See* Affidavit of Donald B. Church, attached as exhibit B to DE 35 (The plaintiff did not object to these amounts as provided by PBCC.).  AdvancMed is thus in breach of the contract due to its failure to make the required payments.  The court finds that there are no disputed issues of material fact regarding whether Advancmed breached the finance lease with PBCC, or whether AdvancMed is liable to PBCC for the unpaid lease payments totaling $33,552.87 and the reasonable costs and attorneys' fees that PBCC incurred in enforcing its rights.  Therefore, PBCC is entitled to summary judgment

on its counter-claim against AdvancMed.

Accordingly,

**IT IS ORDERED** that defendant Pitney Bowes, Inc.'s motion for summary judgment (DE 34) is **GRANTED.**

**IT IS FURTHER ORDERED** that Counts I and IV of the plaintiff's complaint against Pitney Bowes, Inc. are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that counter-claimant Pitney Bowes Credit Corporation's motion for summary judgment (DE 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that in the event that counsel are unable to agree on the counter-claimant's costs and fees, the counter-claimant shall file and serve on opposing counsel a motion for reasonable costs and fees, together with any appropriate affidavits, within twenty (20) days of the entry of this order.  Response and reply times shall run as directed in the Local Rules.

**IT IS FURTHER ORDERED** that the pretrial conference of this case, now scheduled for September 7, 2007, at 11:00 a.m., is **CANCELLED.**


Signed on August 31, 2007



JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY